UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY ANGELILLO,<br>      Plaintiff,<br><br>v.<br><br>HARTE NISSAN, INC. and NISSAN MOTOR<br>ACCEPTANCE CORP.,<br>      DefendantS. | :<br>:<br>:<br>:    3:09-cv-1313 (WWE)<br>:<br>:<br>:<br>: |

**MEMORANDUM OF DECISION ON
DEFENDANTS' MOTIONS TO DISMISS**

Plaintiff Anthony Angelillo brings this action against Harte Nissan, Inc. ("Harte") and Nissan Motor Acceptance Corp. ("NMAC") asserting that Harte sold plaintiff a "new" car despite the car having previously been in a significant accident requiring substantial repairs. Plaintiff brings claims under the federal Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, et seq., for breach of the implied warranty of merchantability and for violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110 et seq. Now pending before the Court are defendants' motions to dismiss (Docs. #6, 23).

**BACKGROUND**

For purposes of ruling on the motion to dismiss, the Court accepts all allegations of the complaint as true. In addition, because the contract at issue was incorporated into the complaint by reference, the Court will also review it. See Leonard v. Israel Discount Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999).

Plaintiff is a consumer living in Manchester, Connecticut. Defendant Harte is an authorized dealer of Nissan automobiles located in Hartford, Connecticut. NMAC is

1

licensed with the Connecticut Department of Banking as a sales finance company. It accepts the assignment of installment contracts for motor vehicles from dealerships including Harte.

Plaintiff purchased a 2007 Nissan 350Z from Harte on August 12, 2008 for a total cash price of $34,932.52. He paid $4,000 as a down payment and financed the balance of $30,932.52 pursuant to a retail installment sales contract that was assigned to NMAC. The finance charge under the contract was $6,494.52, for a total sale price of $41,427.04. The contract provided that NMAC may, in the event of a default by the buyer, recover costs of repossession, late fees and attorney's fees.

The purchase order described the automobile as a "New 2007 Nissan 350Z." The purchase order form used by Harte contained three boxes to describe the motor vehicle that was being sold: "Demonstrator," "Used" and "New." Harte checked the box marked "New" on the purchase order.

Prior to the sale, the automobile was in a significant accident. As a result of the accident, the automobile needed significant repairs. Harte did not disclose the accident or repairs to plaintiff prior to the time of purchase. Plaintiff experienced multiple and repeated problems with the automobile and brought it to Harte. Harte was unable to make repairs to plaintiff's satisfaction. In July 2009, plaintiff learned that the vehicle had been in an accident prior to his purchase.

On July 24, 2009, plaintiff, through his attorney, notified Harte and NMAC that he had revoked his acceptance of the automobile pursuant to section 42a-2-608 of the Connecticut General Statutes and that he was retaining possession of the vehicle as security for his claim pursuant to section 42a-711 of the Connecticut General Statutes.

To date, defendants have failed and refused to refund to plaintiff the money that he paid under the contract.

The first count of plaintiff's complaint is for breach of the implied warranty of merchantability, Conn. Gen. Stat. § 42a-2-314.  Plaintiff alleges that Harte's conduct was intentional, wanton and in bad faith.  Plaintiff seeks punitive damages for this conduct.  The second count is for a violation of CUTPA.

Both defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) contending that plaintiff's claimed damages do not reach the $50,000 threshold for establishing federal jurisdiction over plaintiff's claims pursuant to 15 U.S.C. § 2310(d)(1)(B).  In addition, NMAC moves to dismiss pursuant to rule 12(b)(6) because the MMWA does not create a right of action against a financier of a consumer's purchase, only against a "warrantor."

## DISCUSSION

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "challenges the court's statutory or constitutional power to adjudicate the case before it."  2A James W. Moore, Moore's Federal Practice, ¶ 12.07, at 12-49 (2d ed. 1994).  "[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress."  Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009).  Once the question of jurisdiction is raised, the burden of establishing subject matter jurisdiction rests on the party asserting such jurisdiction.  Thomson v. Gaskill, 315 U.S. 442, 446 (1942).

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support

thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff is obliged to amplify a claim with some factual allegations to allow the court to draw the reasonable inference that the defendant is liable for the alleged conduct. Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937 (2009).

**I.      Challenge Pursuant to Rule 12(b)(1)**

The MMWA grants relief to a consumer "who is damaged by the failure of a ... warrantor ... to comply with any obligation ... under a written warranty." 15 U.S.C. § 2310(d)(1). "The MMWA makes a warrantor directly liable to a consumer for breach of a written warranty." Diaz v. Paragon Motors of Woodside, 424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006). Such a consumer may file a claim for a breach of an implied warranty in federal court. 15 U.S.C. § 2310(d)(1). A federal court does not have jurisdiction in such a case "if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit." Id. § 2310(d)(3)(B).

Pendent state law claims are not included in determining whether the value of "all claims" reaches the jurisdictional threshold. See Jiminez v. Going Forward, Inc., 25 F. Supp. 2d 54, 55 (D. Conn. 1998). The text of the statute indicates that the $50,000 threshold also excludes interest. Golden v. Gorno Bros., Inc., 410 F.3d 879, 883 (6th

Cir. 2005). Finally, attorney's fees are excluded from the calculus. See Boelens v. Redman Homes, Inc., 748 F.2d 1058, 1069 (5th Cir. 1984).

Plaintiff argues that the jurisdictional threshold is reached by summing the value of the car – $34,932.52 – plus the amount of the finance charges, as well as the expected value of the punitive damages, which in Connecticut are measured based on attorney's fees, which counsel contends will be in excess of $25,000. Defendants contend that the Court must subtract the residual value of the automobile.

Finance charges are not to be included in determining whether the MMWA amount in controversy is met. As courts have previously determined, finance charges are analogous to the interest charges that Congress meant to exclude from the determination of jurisdiction. See, e.g., Golden, 410 F.3d at 885 ("The finance charges of a contract should not be added when determining if the amount in controversy has been satisfied."). Therefore, the starting point for the analysis is the price paid for the automobile, $34,932.52.

As stated above, legal fees are not included in evaluating whether the $50,000 threshold is met. Punitive damages, however, should be included in determining jurisdiction if they are available under applicable state law. See Boyd v. Homes of Legend, Inc., 188 F.3d 1294, 198 (11th Cir. 1999). Under Connecticut law, punitive damages are available for a claim of breach of warranty if plaintiff alleges conduct that is "done with a bad motive or with a reckless indifference to the interests of others." L.F. Pace & Sons, Inc. v. Travelers Indemnity Co., 9 Conn. App. 30, 48 (1986).

Under Connecticut law, punitive damages awarded for a wanton tort are limited to attorney's fees less taxable costs. As the Connecticut Supreme Court has noted, in

an effort to balance the interests of punishing the tortfeasor and ensuring that the awarded damages are not overly harsh, Connecticut limits the amount of attorney's fees to the victim's cost of litigation. See Waterbury Petroleum Products, Inc. v. Canaan Oil & Fuel Co., 193 Conn. 208, 235-238 (1984). This discussion, as well as other discussions by the Connecticut Supreme Court, would indicate that defendants' characterizations of punitive damages is misplaced. Punitive damages in Connecticut are not legal fees; rather, they are measured with regard to legal fees. See Berry v. Loiseau, 223 Conn. 786 (1992) (recognizing rule that common law punitive damages are limited to litigation costs); Collens v. New Canaan Water Co., 155 Conn. 477, 488 (1967); Triangle Sheet Metal Works, Inc. v. Silver, 154 Conn. 116, 127 (1966). As such, the Court reads the Connecticut jurisprudence as indicating not that a plaintiff should recover attorney's fees as punitive damages, but that he recovers punitive damages which are measured by the accrued attorney's fees.

Plaintiff's counsel submitted in a declaration that he believes that attorney's fees in this case will exceed $20,000 in the case of a bench trial and $50,000 in the case of a jury trial. Defendants do not dispute this figure, and the Court finds it to be a reasonable expectation of total attorney's fees should the case proceed to trial.[1]

Courts have previously held that the residual value of the car must be subtracted from the purchase price for determining the amount in controversy. See Golden, 410 F.3d at 884; Schimmer v. Jaguar Cars, Inc., 384 F.3d 402, 406 (7th Cir. 2004); Samuel-Bassett v. Kia Motors Am., Inc., 357 F.3d 392, 402 (3d Cir. 2004). In Samuel-Bassett,

---

[1] In his complaint, plaintiff seeks punitive damages that "will exceed" $20,000.

the court held that "the party asserting federal jurisdiction must allege the cost of the replacement vehicle, minus both the present value of the allegedly defective vehicle and the value that the plaintiff received from the allegedly defective vehicle." Id. at 402. Here, plaintiff asks the Court to forgive his failure to do so, noting that expert testimony would be required and such analysis will not be necessary to establish his claims under Connecticut law.

For a claim of breach of the implied warranty of merchantability, the value of the damages is generally "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if the goods had been as warranted...." Conn. Gen. Stats. § 42a-2-714(2); Randazzo v. McCarthy, 2005 Conn. Super. LEXIS 2284 (Conn. Super. Ct. Aug. 18, 2005). Where, however, the product cannot be repaired and is essentially worthless, full refund of the purchase price may be an appropriate remedy. See Bishop v. Stevens Ford, Inc., 1997 Conn. Super. LEXIS 255, *8 (Conn. Super. Ct. Jan. 30, 1997).

The complaint does not allege the present value of the automobile in its damaged condition. Under his claim for breach of warranty, plaintiff seeks a refund of all amounts paid for the vehicle plus consequential damages and punitive damages. For plaintiff to recover the full amount of the money that he paid for the vehicle, he would either have to show that the automobile is worthless or he would have to return the automobile to Harte. Plaintiff does not allege that the vehicle is worthless, but instead that the vehicle required significant repairs which Harte was unable to make to plaintiff's satisfaction. Without any factual allegation on the value of the automobile, if any, the Court cannot determine what the residual value of the automobile is for

determining whether jurisdiction exists.

Plaintiff argues that under Schimmer, it would be necessary to engage expert witnesses and for there to be an evidentiary hearing to determine jurisdiction. This, however, is not the case. Under Schimmer and other cases, plaintiff would need only allege the residual value of the automobile pursuant to the standard of Federal Rules of Civil Procedure 8 and 11(b). In this case, however, because of the allegations that would support punitive damages, the residual value of the automobile may not be relevant.

If the automobile is worthless, the damages are the price plaintiff paid plus the punitive damages. In such a case, the amount in controversy equals $34,932.52 in actual damages plus between $25,000 and $50,000 in punitive damages. Therefore, jurisdiction would exist.

If, on the other hand, the automobile has a residual value, the damages equal the price paid for the vehicle, which represents its value as warranted, minus the current price of the car plus punitive damages. In this scenario, damages would equal $34,032.52 plus between $25,000 and $50,000 minus the actual value of the car in its current state. If the car has lost no value due to the damage – an assumption belied by the complaint – jurisdiction would still lie as plaintiff could recover $50,000 in punitive damages. Unlike in diversity jurisdiction, plaintiff need not allege an amount-in-controversy exceeding a certain level; he need only allege an amount-in-controversy not less than $50,000. See 15 U.S.C. § 2310(d)(3)(B). In this instance, it does not appear to a legal certainty that the claim is for less than the jurisdictional amount of $50,000. See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)

("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."); Hall v. EarthLink Network, Inc., 396 F.3d 500, 507 n.5 (2d Cir. 2005).

Because punitive damages are included in the calculation of the threshold amount, it does not appear to a legal certainty that the $50,000 jurisdictional threshold will not be met in this case, and the Court has jurisdiction over this action.

## II.    NMAC's Motion to Dismiss

NMAC also moves to dismiss on the grounds that it is not a warrantor who can be held liable under the MMWA.  The law provides that "only the warrantor actually making a written affirmation of fact, promise, or undertaking shall be deemed to have created a written warranty, and any rights arising thereunder may be enforced under this section only against such warrantor and no other person."  15 U.S.C. § 2310(f).

Plaintiff contends that the contract included language which provides:

> Notice: Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof.  Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.

This language was included in the contract pursuant to the FTC Holder Rule, 16 C.F.R. § 433.2(a).

Although NMAC does not point to any case addressing the FTC Holder Rule as applied to the MMWA, several courts have held that the FTC Holder Rule is trumped by the specific provisions of the Truth in Lending Act ("TILA").  Specifically, the Court of Appeals for the Seventh Circuit, in addressing the Holder Rule as applied to TILA,

stated that the Holder Rule "even though contained within the contract, was not the subject of bargaining between the parties, and indeed could not have been. It is part of the contract by force of law, and it must be read in light of other laws that modify its reach." Taylor v. Quality Hyundai, 150 F.3d 689, 693 (7th Cir. 1998). The court went on to cite Foster v. Celani, 849 F.2d 91, 92 (2d Cir. 1988) for the proposition that "regulations that contravene congressional intent cannot be upheld." See also Robbins v. Bentsen, 41 F.3d 1195, 1198 (7th Cir. 1994) ("Regulations cannot trump the plain language of statutes...."). The Court of Appeals therefore affirmed the judgment in favor of the assignees, finding the limit on liability contained in TILA unaffected by the Holder Rule. See also Diaz v. Paragon Motors of Woodside, Inc., 424 F. Supp. 2d 519, 544 (E.D.N.Y. 2006) ("Every Circuit to address the issue has found that the specific provisions of TILA override the more general provisions of the Holder Rule....").

The Court sees no reason to distinguish the cases addressing TILA and the instant case. In both instances, the FTC Holder Rule is required by a regulation to be placed in a contract, which is the subject of a federal law that limits federal jurisdiction on a claim asserted pursuant to it. This case stems from a written warranty made by Harte. The limitation-of-liability provision therefore bars a claim against NMAC. The Court finds that the limiting jurisdictional provision of the MMWA, 15 U.S.C. § 2310(f), supercedes the FTC-required insert, and plaintiff cannot assert a claim against NMAC, as assignee, under the MMWA.

NMAC requests that the Court refuse to exercise supplemental jurisdiction over NMAC and dismiss the CUTPA claim against it without prejudice. Because the Court will allow the claims against Harte to proceed and the claims originate from the same

nucleus of facts, the Court will exercise jurisdiction over the CUTPA claim asserted against NMAC.

## CONCLUSION

For the foregoing reasons, the Court GRANTS NMAC's motion to dismiss (Doc. #6) in part and DENIES Harte's motion to dismiss (Doc. #23).

Dated at Bridgeport, Connecticut, this 17th day of February, 2010.

<pre>
                              /s/
                    Warren W. Eginton
                    Senior United States District Judge
</pre>